**CONTINENTAL AMERICAN LIFE INSUR-ANCE COMPANY, a corporation of the State of Delaware, Plaintiff,**

**v.**

**CITY OF WILMINGTON, a municipal corporation of the State of Delaware, Defendant.**

Superior Court of Delaware, New Castle.

Dec. 29, 1970.

Bernard S. Dempsey, Wilmington, for plaintiff.

Clement C. Wood, First Asst. City Sol., for the City of Wilmington, for defendant.

STIFTEL, President Judge.

The City of Wilmington has a two hundred dollar license fee on the owners or operators of office buildings leasing 2500 square feet of office space. See §§ 35–39, 35–53, Wilmington City Code.

§ 35–37 provides:

"Persons owning or operating office buildings engaged in the business of leasing office space shall pay, per year, the license fee is required by § 35–53; provided, that this provision shall not apply to any space leased by any office building in which there are less than two thousand five hundred square feet."

Continental American Life Insurance Company occupies most of the office space in its own home-office building in the City of Wilmington but rents more than 2,500 square feet of office space to others. Continental seeks exemption from this fee and has moved for summary judgment in the declaratory judgment action it has filed.

Continental claims that the City is barred from assessing the fee by reason of the State's preemptive and prohibitive provisions in 18 Del.C. § 713, as follows:

"§ 713.   In lieu, preemption provision

"(a) The fee, charges and premium taxes imposed by the State shall be in lieu of all county and municipal license fees and taxes upon the business of insurance in this State, excepting property taxes.

"(b) The State hereby *preempts* the field of regulating, or of imposing excise, privilege, franchise, income, license, permit, registration and similar taxes, licenses and fees upon, *insurers and their general agents, agents and other representatives as such;* and on the intangible property of insurers or such representatives; *and all political subdivisions or agencies thereof in this State are prohibited from regulating insurers* or their general agents, agents and other representatives as such, and from imposing upon them any such tax, license, or fee. Except, that this provision shall not prohibit the imposition by political subdivisions of taxes upon real and tangible personal property."

Continental and the City agree that the license fee is not a direct tax on the real or personal property as such.  They agree that it is a fee imposed on the owner or operator of an office building in which 2,500 or more square feet of office space is leased.  They disagree on the meaning of the words "business of insurance", recited in § 713(a).  Continental argues that the term includes the functioning of the corporation in its capacity to establish and maintain needed reserves.  It maintains that insurance companies exist by collecting premium monies and investing the net monies after payment of operating expenses in stocks, bonds, and *real estate*.  It claims, therefore, that "investment is a necessary and integral function of the business of insurance".  The City, on the other hand, asserts that the license fee is just what it appears to be, namely, a fee for the privilege of Continental to engage in the business of leasing 2,500 square feet of office space to others, an activity which has nothing to do with the insurance business.

Is leasing office space by a life insurance company operating in Delaware part of the insurance business so as to exempt Continental from the provisions of § 35–37 of the Wilmington City Code?

18 Del.C. § 102(b) defines insurance as:

"* * *  a contract whereby one undertakes to pay or indemnify another as to loss from certain specified contingencies or perils, called 'risks,' or to pay or grant a specified amount or determinable benefit in connection with ascertainable risk contingencies, or to act as surety."

18 Del.C. § 103, defines "Transacting Insurance":

"In addition to other aspects of insurance operations to which provisions of this title by their terms apply, *'transact' with respect to a business of insurance* includes any of the following:

(1)   Solicitation or inducement;

(2)   Negotiations;

(3) Effectuation of a contract of insurance;

(4) Transaction of matters subsequent to effectuation and arising out of such a contract."

More specifically, 18 Del.C. § 902 defines life insurance as "insurance on human lives". The section explains:

"The transaction of life insurance includes also the granting of endowment benefits, additional benefits in event of death or dismemberment by accident or accidental means, additional benefits in event of the insured's disability, and optional modes of settlement of proceeds of life insurance."

None of these definitions include the leasing of office space by an insurance owner-landlord of an office building as part of the business of insurance or life insurance. While it is true that all monies coming into the coffers of Continental are part of its business in the broadest sense, it is also true that its landlord activity, which helps to generate these funds, is in no way connected to the contract of insurance or to the business of effecting that contract. Compare Hill v. National Auto Glass Co., D.C.Cal., 293 F.Supp. 295. See, Ballentine's Law Dictionary, Third Ed., "insurance business", p. 643. If an insurance company building owner rents more than 2,500 square feet of office space to the public, it should be treated as any other landlord similarly situated insofar as payment of the license fee is concerned. The Legislature did not intend by enactment of 18 Del.C. § 713 to give a competitive advantage to insurance company landlords over other landlords of business space. Compare, Blum, et al. v. City of Wilmington, Del.Super., 272 A.2d 348, decided Nov. 17, 1970. When Continental acts as landlord of more than 2,500 square feet of office space, it is not engaging in the insurance business. Consequently, § 713 is inapplicable.

Lastly, Continental argues that § 7-1 Wilmington City Code prohibits the license fee if the levy thereof "shall or may have the effect to bring into operation any retaliatory or reciprocal tax or license laws of any other state or county as against corporations organized under the laws of the state."

Continental states that it is presently licensed in forty-seven states and the District of Columbia and has applications pending in Kansas, Wyoming and West Virginia. Continental explains that forty of the forty-seven states in which it is licensed have a unique system of retaliatory legislation. These taxes, it says, automatically impose on Delaware insurance companies a tax rate equal to that which could be imposed on an insurer from the foreign state in Delaware.

I am of the opinion that no retaliatory tax would be operative in this case. Retaliatory taxes in other jurisdictions are similar to ours (18 Del.C. § 531). See 2, Couch on Insurance, 2d Ed., 21:91. They generally operate with regard to taxing schemes of insurance companies as insurers, that is, in regard to a levy on the business of insurance itself. As appointed out in Annotation:

Retaliatory Tax Laws,
91 A.L.R. 795, 817:

"The primary object of retaliatory acts against foreign corporations is not the raising of revenue, this being merely an incident thereto (citing cases) but to secure for the insurance companies of the enacting state evenhanded treatment by the legislatures of other states (citing cases)." See, also, 2 Couch on Insurance 2d, § 21:92.

Since Continental is not being taxed for activities which are a part of its business of insurance, it is unlikely that the problem of retaliatory taxation exists. Were this not so, Continental's theory would suggest a conclusion that state differentials in such things as motor vehicle fees, fuel taxes and

the like would be included in the computation of a retaliatory tax. See, Pacific Mutual Life Insurance Co. v. Gerber, 22 Ill.2d 196, 174 N.E.2d 862 (Sup.Ct.).

This fee is one uniformly imposed on all lessors of office space in Wilmington. No consideration is given to state of incorporation. Thus, no discrimination. A uniform tax burden of this nature should not be part of the computation for regulatory tax purposes.

Plaintiff's motion for summary judgment is denied.

So ordered.